Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| HANI NAFEZ IBRAHIM<br><br>Apelada<br><br>v.<br><br>DANIEL RIVERA QUILES<br><br>Apelante | KLAN202300812 | Apelación<br>Procedente del Tribunal de Primera Instancia,<br>Sala de AGUADILLA<br><br>Caso Núm.:<br>A AC2018-0143<br><br>Sobre:<br>Daños por incumplimiento de contrato |
|---|---|---|

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de febrero de 2024.

Comparece ante nosotros Daniel Rivera Quiles (en adelante, señor Rivera Quiles o el apelante), mediante recurso de *Apelación* presentado el 14 de septiembre de 2023. En este, nos solicita la revocación o, en alternativa, la modificación de la *Sentencia* emitida el 20 de julio de 2023, notificada en esa misma fecha, por el Tribunal de Primera Instancia, Sala de Aguadilla (en adelante, foro primario o TPI). Por medio de dicho dictamen, el TPI declaró *Con Lugar* la causa de acción presentada por Hani Nafez Ibrahim (en adelante, Hani Nafez o apelado) en su contra.

Evaluado el expediente ante nuestra consideración, por los fundamentos que a continuación expondremos, **modificamos** la *Sentencia* apelada.

**-I-**

El caso de epígrafe inició el 31 de octubre de 2018, con una *Demanda* instada por M.M. Service Station Inc., contra el señor Rivera Quiles. En síntesis, M.M. Service Station Inc. solicitó el cumplimiento específico más los daños y perjuicios por el incumplimiento de un contrato de opción

Número Identificador

SEN2024 _____

otorgado por las partes para la compraventa de una propiedad comercial en la cual ubica una estación de gasolina. En la referida *Demanda*, M.M. Service Station, Inc. adujo que el 27 de septiembre de 2016 suscribió un contrato titulado *"Contrato de Opción de Compra de Propiedad Comercial con Estación de Gasolina"* con el señor Rivera Quiles, el cual fue reconocido y suscrito ante el Notario Nasser A. Taha Montalvo. Asimismo, alegó que las negociaciones para la compraventa de la mencionada propiedad estaban encaminadas desde febrero de 2016, que para la adquisición de la mencionada propiedad le adelantó al apelado la suma de $140,000.00 dólares y, posteriormente, la suma de $20,000.00 dólares, en concepto de depósito para que fuese aplicado al precio de compraventa acordado, y que las gestiones de financiamiento para la adquisición de la mencionada propiedad se vieron afectadas y no pudieron concluir debido a que Rivera Quiles no proveyó la información ambiental y el estudio de título de la propiedad solicitado.

El apelante presentó su *Contestación a la Demanda.* Al así hacer, negó la alegación de incumplimiento contractual, que por su culpa se entorpecieron los trámites de financiamiento, que tuviese obligación en devolver la suma de dinero adelantada por M.M. Service Station Inc., y que no proveyó la información ambiental. Afirmativamente, afirmó que fue M.M. Service Station Inc. quien incumplió con su deber de gestionar el financiamiento y entorpeció el mismo. A su vez, el apelante reconvino alegando que por los actos temerarios de M.M. Service Station Inc. estuvo impedido de vender la propiedad a terceros y, por ello, solicitó el pago de $200,000.00 dólares en concepto de daños y perjuicios.[1]

Tras varios trámites procesales, el TPI emitió una orden para la consignación de los $160,000.00 dólares que se habían adelantado en

---

[1] En cuanto a la *Reconvención*, M.M. Service Station, Inc. oportunamente presentó su *Contestación a Reconvención* en la que negó todas las alegaciones reconvenidas.

concepto de depósito y, posteriormente, ordenó enmendar el epígrafe de la *Demanda* reconociendo la subrogación de los derechos de la corporación demandante a favor del señor Hani Nafez Ibrahim. Finalmente, el juicio en su fondo se celebró los días 28 y 29 de noviembre de 2022. Durante el mismo, como prueba testifical se presentó el testimonio de Hani Nafez, aquel del señor Rivera Quiles y la declaración del Lcdo. Nasser A. Taha Montalvo.

Escuchada y aquilatada la prueba desfilada, el 20 de julio de 2023, el foro primario dictó la *Sentencia* apelada. En esta, el TPI estableció treinta y tres (33) Determinaciones de Hechos. En lo aquí pertinente, las de mayor relevancia a los señalamientos de error efectuados por el apelante son las siguientes:

1. El 27 de septiembre del 2016, las partes otorgaron contrato de opción de compra de una estación de gasolina, localizada en Aguadilla, Puerto Rico, por ajustado y convenido precio de $800,000.00.

2. En febrero de 2016, las partes habían otorgado un contrato similar;

3. Al 27 de septiembre de 2016, la parte demandada había recibido de manos de la demandante la suma de $160,000.00 dólares en concepto de depósito para ser aplicado al precio de compraventa acordado;

[…]

5. El optante no logró, dentro del término pactado para ejercer la opción de compraventa, obtener del vendedor el estudio ambiental sobre la propiedad requerido por el banco y por la compañía Peerless, para financiar la compra;

[…]

13. La parte demandada, ni PUMA, le proveyeron al demandante copia del estudio ambiental sobre la propiedad, cual se le requería al demandante para completar la gestión de financiamiento, razón por la cual el demandante no pudo llevar a cabo y completar la compraventa de la propiedad;

[…]

16. Las partes estipularon, y el propio licenciado Taha Montalvo testificó, que ninguno de los contratos otorgados contenía una cláusula penal;

[…]

18. Surge del testimonio de las partes durante el juicio, y así también esta consignado en varias Resoluciones del tribunal, que el demandado recibe y obtiene de PUMA la suma de $7,000.00 mensuales, como renta por la propiedad objeto de esta demanda. Las partes fueron juntos a oficinas principales PUMA a realizar gestiones encaminadas a lograr realizar la compraventa. No obstante, no quedó probado lo conversado en dicha revisión.

[…]

20. Durante el juicio, el demandado no proveyó evidencia documental o testifical alguna, respecto a los daños alegados en su reconvención;

[…]

22. Conforme el testimonio creído y vertido durante el juicio por el demandante, la propiedad (estación de gasolina) objeto del contrato de opción de compraventa, le hubiera producido un beneficio neto al demandante de aproximadamente $15,000.00 dólares mensuales, de este haberla operado.

23. Conforme el testimonio creído y vertido durante el juicio, la propiedad (estación de gasolina) objeto del contrato de opción de compraventa, le hubiera producido al demandante un beneficio neto de $7,000.00 dólares, producto de la renta que PUMA mensualmente paga por la propiedad, de este continuar con el alquiler y arrendamiento de la estación de gasolina;

24. Conforme el testimonio creído y vertido durante el juicio, del demandado haberle devuelto los $160,000.00 dólares al demandante, a la fecha que los solicitó por primera vez, este pudo recibido, éste pudo haber adquirido otra estación de gasolina;

[…]

26. El demandante le solicitó al demandado la devolución de los $160,000.00 dólares adelantados como opción, no mas tarde de junio de 2017;

[…]

**28. La parte demandante ha sufrido daños económicos por causa de las actuaciones, omisiones e incumplimiento del contrato, por parte de la demandada;**

**29. La parte demandada fue temeraria al no proveer la información y documentos requeridos por el demandante, provocando con su actuación que no se pudiera concretar la compraventa del inmueble;**

**30. La parte demandada ha sido temeraria al no querer devolver los $160,000.00 dólares que le fueron adelantados como opción;**

**31. La parte demandante ejerció su derecho de opción a comprar la propiedad;**

**32. La parte demandante tiene derecho a comprar la propiedad objeto de esta demanda;**

**33. La parte demandante tiene derecho de obtener de la parte demandada la información y documentos necesarios para obtener el financiamiento para la compra de la propiedad;**

[…] (Énfasis nuestro)

En virtud de dichas determinaciones y el análisis efectuado, el foro primario condenó a Rivera Quiles a la devolución de los $160,000.00 que habían sido adelantado por concepto de depósito por parte de Hani Nafez, al pago de daños económicos a causa de la no devolución del dinero adelantado por $42,933.52 y al pago de $392,000.00 por daños económicos por falta de cumplimiento específico del arrendamiento de la estación de gasolina a razón de $7,000.00 mensuales por 56 meses desde noviembre de 2018. Por último, le ordenó pagar $20,000.00 por conceptos de honorarios de abogados debido a su conducta frívola y temeraria.

Inconforme con la *Sentencia* emitida, el 3 de agosto de 2023 Rivera Quiles presentó una *Moción Solicitando Reconsideración y Determinaciones de Hechos y Conclusiones de Derecho Adicionales*. El 14 de agosto de 2023, notificada y archivada en autos el 15 de agosto de 2023, el foro primario emitió una Resolución declarando *No Ha Lugar* la *Moción Solicitando Reconsideración y Determinaciones de Hechos y Conclusiones de Derecho Adicionales*. Aun insatisfecho con dicha determinación, Rivera Quiles acudió ante nosotros mediante el recurso de *Apelación* de epígrafe y le imputa al TPI la comisión de los siguientes errores:

1. Erró el Tribunal de Instancia al conceder una partida de [$42,933.52] por daños económicos, por la falta de devolución de los $160,000.00 desde la radicación de la demanda.

2. Erró el Tribunal de Instancia al conceder una partida de [$392,000] por daños económicos, sin fundamento en la prueba ni base jurídica que lo acredite; y sin el demandante tener derecho titular para tal determinación.

3. Erró el Tribunal de Instancia al conceder daños económicos que no fueron probados, especulativos y contrarios al ordenamiento jurídico vigente.

4. Erró el Tribunal de Instancia al condenar a la parte demandada al pago de la suma de $20,000.00 por concepto de honorarios por temeridad sin fundamento en hechos y en derecho para ello.

Atendido el recurso, el 15 de septiembre de 2023, emitimos *Resolución* en la que establecimos el término que tenía el apelado para expresarse. Habiéndose presentado por el apelante una *Moción informando transcripción de prueba oral*, el 25 de septiembre de 2023 dejamos sin efecto el término brindado y establecimos aquellos para la presentación de la transcripción de la prueba oral, alegato suplementario y oposición a recurso.

El 18 de diciembre de 2023, tras haber solicitado y obtenido una extensión de tiempo para ello, el apelante sometió su *Alegato suplementario*. El apelado por su parte compareció el 18 de enero de 2024 mediante *Oposición a apelación*. Con el beneficio de la comparecencia de las partes, damos por sometido el asunto y estando listos para resolver, así lo hacemos.

-II-

-A-

En este caso, los contratos de opción a compra acontecieron en el año 2016 y la cadena de sucesos que motivó la *Demanda* contra Rivera Quiles ocurrió en el año 2018, previo a la entrada en vigor del nuevo ordenamiento hoy vigente. Por ende, a la controversia ante nos le aplican los preceptos del derogado Código Civil de 1930. Es decir, el derecho citado y aplicado en este caso será aquel vigente al momento de los hechos.

El Código Civil de 1930 regula lo relativo a la responsabilidad civil extracontractual. Específicamente, el Artículo 1802 establece la obligación de reparar daños causados en los que medie culpa o negligencia.[2] En lo pertinente, el citado Artículo dispone:

> El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. *Id.*

---

[2] 31 LPRA Sec. 5141.

La responsabilidad civil extracontractual surge al amparo de dicha disposición si concurren los siguientes tres elementos: (1) un daño, (2) una acción u omisión negligente o culposa y, (3) una relación causal entre ambos. Camacho Rivera v. Richard Mitchell, Inc., 202 DPR 34 (2019); Nieves Díaz v. González Massas, 178 DPR 820 (2010); López v. Porrata Doria, 169 DPR 135 (2006); Rivera v. SLG Díaz, 165 DPR 408 (2005); Toro Aponte v. E.L.A. 142 DPR 464 (1997); Ramírez v. ELA, 140 DPR. 385 (1996).

El requisito de "acción u omisión negligente o culposa" se refiere a aquella falta del debido cuidado al no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. Camacho Rivera v. Richard Mitchell, Inc., *supra*; Nieves Díaz v. González Massas, *supra*; Rivera v. SLG Díaz, *supra*; Valle v. E.L.A., 157 DPR 1 (2002); Toro Aponte v. E.L.A.., *supra*; Ramos v. Carlo, 85 DPR 353 (1962). El concepto de "culpa" del Artículo 1802, *supra*, es tan infinitamente abarcador como lo suele ser la conducta humana. Nieves Díaz v. González Massas, *supra*; López v. Porrata Doria, *supra*. Por ello, ésta se debe analizar con un criterio amplio. Nieves Díaz v. González Massas, *supra*; Rivera v. SLG Díaz, *supra*; Toro Aponte v. E.L.A., *supra*; Santini Rivera v. Serv. Air, Inc., 137 DPR 1 (1994).

Sobre el requisito de la "relación causal entre daño y culpa o negligencia", rige en Puerto Rico la doctrina de la causalidad adecuada. Conforme a ella, se considera causa aquella condición que ordinariamente produciría el daño, según la experiencia general. Camacho Rivera v. Richard Mitchell, Inc., *supra*; Colon Santos v. Coop. Seg. Mult. PR, 173 DPR 170 (2008); Toro Aponte v. E.L.A., *supra*; Soto Cabral v. E.L.A., 138 DPR 298 (1995).

En cuanto al requisito de "daño", nuestro más alto foro ha expresado que éste constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio,

causado en contravención de una norma jurídica y por el cual ha de responder otra persona. Nieves Díaz v. González Massas, *supra*; Ramírez Ferrer v. Conagra Foods PR, 175 DPR 799 (2009); López v. Porrata Doria, *supra*. En los casos en que el daño alegado se deba a una omisión, se configurará una causa de acción cuando: "(1) exista un deber de actuar y se quebrante esa obligación, y (2) cuando de haberse realizado el acto omitido se hubiese evitado el daño." Santiago v. Sup. Grande, 166 DPR 796, 807 (2006); Administrador v. ANR, 163 DPR 48 (2004); Elba A.B.M. v. U.P.R., 125 DPR 294 (1990). Por lo anterior, en contextos caracterizados por una especie de inadvertencia u omisión, procede determinar si existía un deber jurídico de actuar por parte de quien alegadamente causó el daño. Arroyo López v. E.L.A., 126 DPR 682, 686-87 (1990).

Existen dos tipos de daños: (1) los daños especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos; y (2) los daños generales, conocidos como daños morales. Por un lado, los daños especiales se refieren a "toda aquella pérdida que recae sobre bienes objetivos, pues éstos admiten valoración económica debido a que impactan directamente el patrimonio del perjudicado." Nieves Díaz v. González Massas, *supra*; Rivera v. SLG Díaz, *supra.* Mientras que los daños generales son aquellos infligidos a las creencias, los sentimientos, la dignidad, la estima social o la salud física o psíquica del perjudicado. *Id.* La valoración de los daños generales descansa en la sana discreción del juzgador basada en los hechos que considere probados. *Id.*

En lo correspondiente a la estimación y valoración de los daños, repetidamente se ha afirmado que la tarea judicial de estimar y valorar los daños es una compleja y delicada debido a que no existe un sistema de computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Semidey et al. v. Fcia. Belmonte et al., 211 DPR 222 (2023), al citar a Herrera, Rivera v. S.L.G.

Ramírez-Vicéns, 179 DPR 774, 791 (2010) y otros. **Como regla general, los foros apelativos no deben intervenir con la estimación de los daños que realicen los tribunales de instancia, a menos que las cuantías concedidas sean ridículamente bajas o exagerada altas**. Ese ejercicio de valoración de daños involucra cierto grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. Además, el foro primario es el que tiene contacto directo con la prueba testifical presentada y, por ende, está en mejor posición de emitir un juicio sobre la valorización de daños. Esta norma impone a quien propone que los daños deben ser modificados la obligación de demostrar la existencia de circunstancias que hacen meritorio que se modifiquen. Meléndez Vega v. El Vocero de PR, 189 DPR 123 (2013).

Al realizar la tarea de impartir daños, los tribunales deben considerar que el conceder cuantías insuficientes por daños tiene el efecto de aminorar la responsabilidad civil a la que debe sujetarse el causante del daño, mientras que conceder daños exagerados conlleva un elemento punitivo, no reconocido por nuestro ordenamiento. *Íd.*, pág. 204. Por ello, una manera de velar porque los daños atribuidos sean razonables es comparar con las sumas de reclamaciones previas en condiciones parecidas, siempre que las indemnizaciones se ajusten al valor presente. Rodríguez et al. v Hospital et al., 186 DPR 889 (2012). No existen dos (2) casos exactamente iguales y cada caso es distinguible por sus propias circunstancias. No obstante, a los fines de determinar si la valorización de los daños en un caso es o no adecuada, las cuantías concedidas en casos anteriores similares resultan de utilidad. Santiago Montañez v. Fresenius Medical, 195 DPR 476, 491 (2016); Meléndez Vega v. El Vocero de PR, *supra,* pág. 205; y Herrera, Rivera v. S.L.G. Ramírez-Vicéns, *supra*, al mencionar a S.L.G. v. F.W. Woolworth & Co., 143 DPR 76, 81-82 (1997). Ahora bien, luego de la valoración económica, los tribunales están obligados a examinar

las circunstancias particulares del litigio para asegurarse de que procede la cuantía concedida. Herrera, Rivera v. S.L.G. Ramírez-Vicéns, *supra*, pág. 786. En todo caso, las compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente. Meléndez Vega v. El Vocero de PR, *supra,* pág. 204.

**-B-**

La Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d) autoriza a los tribunales a imponer el pago de honorarios de abogados a aquella parte o su abogado que haya actuado con temeridad o frivolidad en el trámite de un procedimiento judicial. Véase Torres Montalvo v. Gobernador ELA, 194 DPR 760 (2016). A tales efectos, el aludido precepto dispone:

> (d) Honorarios de abogado. — En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

La antes citada regla, tiene como propósito "establecer una penalidad a un litigante perdidoso que, **por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos**, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". Andamios de P.R. v. Newport Bonding, 179 DPR 503, 520 (2010) y casos allí citados. (Énfasis suplido)

Ahora bien, el concepto de temeridad es uno amplio que ha sido descrito como un comportamiento que incide en los procesos judiciales y afecta, tanto el buen funcionamiento de los tribunales como la administración de la justicia. Id., citando a Meléndez Vega v. El Vocero de PR, 189 DPR 123 (2013). Este precepto, también ha sido definido como **aquella conducta que promueve un pleito que se pudo obviar, lo**

**prolonga innecesariamente o que obliga a una parte a envolverse en trámites evitables.** (Énfasis nuestro). Maderas Tratadas v. Sun Alliance et al., 185 DPR 880 (2012). Véase, además, Andamios de P.R. v. Newport Bonding, *supra*; Marrero Rosado v. Marrero Rosado, 178 DPR 476 (2010); Colón Santos v. Coop. Seg. Múlt. P.R., 173 DPR 170 (2008). A su vez, nuestro Tribunal Supremo ha reseñado que la conducta temeraria sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio." Fernández v. San Juan Cement Co., Inc., 118 DPR 713, 718 (1987), citando a H. Sánchez, *Rebelde Sin Costas*, 4(2) Boletín Judicial 14 (1982).

Igualmente, existe temeridad si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente; si se defiende injustificadamente de la acción; si la parte demandada en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad limitando la controversia a la fijación de la cuantía a ser concedida; si se arriesga a litigar un caso del que se desprendía *prima facie* la negligencia. Negar un hecho que le consta es cierto al que hace alegación, también constituye temeridad. P.R. Oil v. Dayco, 164 DPR 486, 511 (2005), citando a Fernández v. San Juan Cement Co., Inc., *supra*.

La determinación de si se ha incurrido o no en temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y, simultáneamente, le corresponde imponer la cuantía que entienda procedente en respuesta a la conducta temeraria. Meléndez Vega v. El Vocero de PR, *supra*, a la pág. 211; S.L.G. Flores– Jiménez v. Colberg, 173 DPR 843, 866 (2008).

Ante ello, los tribunales apelativos no deben intervenir con el ejercicio de esa discreción, salvo que: se demuestre que hubo un craso abuso de discreción, que el foro recurrido actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, o cuando la cuantía impuesta sea excesiva. P.R. Oil v. Dayco, *supra*.

**-III-**

Por virtud del señalamiento y la discusión de sus 4 errores, el señor Rivera Quiles cuestiona la razonabilidad de las cantidades concedidas como remedio a favor del apelado. Con tal propósito, señala que la sentencia apelada no detalla ni explica qué parámetro fue utilizado por el TPI para conceder la partida de daños económicos por la suma de $42,933.52 otorgada al apelado por daños económicos; clasificándola pues, como una arbitraria.

Así, al discutir su primer señalamiento de error, el Rivera Quiles plantea que, si bien el contrato de opción de compraventa suscrito por las partes no contenía una cláusula penal, el dinero dado por el apelado en concepto de depósito fue utilizado por él para cumplir con la obligación de entregar el inmueble sin cargas y gravámenes que, según fue declarado por el Lcdo. Taha Montalvo, la razón por la que el contrato no se perfeccionó fue la falta de dinero del apelado para la compra. A su vez, y para impugnar la partida dada por daños económicos, el apelante señala que Hani Nafez declaró tener al menos $640,000.00 para adquirir la propiedad, por lo que no podía concluirse que este había sufrido este tipo de daño.

De otra parte, mediante la discusión conjunta de su segundo y tercer señalamiento de error, Rivera Quiles también impugna la partida concedida a Hani Nafez ascendente a $392,000.00 por daños económicos. A tales efectos, establece que dicha partida es contraria a la prueba, toda vez que los contratos de opción en controversia establecen que el vendedor, o

sea él, continuaría devengando las rentas de la propiedad hasta la firma de la escritura de compraventa. Igual contradicción señala entre la partida conferida y algunas expresiones realizadas durante el juicio por el juzgador de hechos en cuanto a la prueba pericial necesaria para demostrar daños. Específicamente, señala la ausencia de prueba pericial que sostenga las declaraciones del apelado en las que el foro primario se basó para conceder los daños otorgados. Por último, en su cuarto señalamiento de error el apelante discute que la imposición de $20,000.00 en concepto de honorarios por temeridad determinada en la sentencia apelada no encuentra respaldo en el expediente y es contraria a derecho.

Hani Nafez, al defender las concesiones impugnadas por el apelante, señala que, de las estipulaciones alcanzadas por las partes en el *Informe sobre conferencia con antelación al juicio* sometido por las partes en el caso, así como de las determinaciones de hechos emitidas por el TPI basadas en la credibilidad que asignó a los testimonios dados en el juicio, surgen suficientes elementos de juicio para aquilatar el daño sufrido por él. Igualmente, afirma que los señalamientos del apelante son errados y descansan en premisas equivocadas. Más aún, afirma que las sumas dadas en resarcimiento responden a un ejercicio estrictamente matemático. Así, explica que los $42,933.52 concedidos responden a los intereses que hubieran rendido los $160,000.00 dados en concepto de depósito, calculados a base de un cinco punto setenta y cinco por ciento mensual (5.75%); que la suma de $392,000.00 trata de la cantidad de meses transcurridos- a razón de $7,000.00 mensuales- desde la radicación de la Demanda hasta la fecha en que se dictó la *Sentencia.* Igual afirmación levanta en cuanto a la imposición de $20,000.00 en concepto de honorarios por temeridad.

Como puede apreciarse, según lo arriba detallado, en general los señalamientos levantados por el apelante se limitan a cuestionar las diferentes partidas concedidas por el foro primario en la sentencia apelada.

Tal cual correctamente este señala, el foro primario no mencionó en su sentencia cuál es la jurisprudencia que utilizó como guía para alcanzar las sumas dadas. Al así hacer, ignoró el llamado claro efectuado por nuestro Tribunal Supremo en Santiago Montañez v. Fresenius Medical, *supra* a detallar en sus dictámenes los casos que utilizan como referencia o punto de partida para la estimación y valoración de daños.

De otra parte, y luego de una detenida evaluación de los planteamientos levantados por las partes, así como de los pronunciamientos de nuestro más alto foro en cuanto a la valoración de daños, resolvemos que la compensación concedida al apelante debe ser variada. Ello, toda vez que tras repasar la transcripción de la prueba que obra en el expediente estimamos que las partidas otorgadas en concepto de daño no guardan proporción con la prueba desfilada.

Como previamente señalamos, nuestro ordenamiento jurídico reconoce dos tipos de daños: los daños especiales- también conocidos como daños físicos, patrimoniales, pecuniarios o económicos- y los daños morales. En cuanto a los daños especiales, al reclamarse estos se requiere que se detalle el concepto de las partidas afectadas para así cuantificar el daño reclamado y fijar la indemnización correspondiente. No obstante, el derecho a ser compensado, aun ante daños especiales, no se derrota por el carácter especulativo de la reclamación. Ello así, ya que, pese a cierto grado de incertidumbre, los tribunales podrán conforme a los hechos particulares del caso, la prueba presentada y los criterios establecidos, determinar una cuantía razonable para indemnizar al perjudicado por los daños sufridos. Rivera v. SLG Díaz, *supra*, al citar a Sánchez v. Cooperativa Azucarera, 66 DPR 346 (1946); SLG v. F.W. Woolworth & Co., *supra* y otros. Al evaluar los daños, el juzgador debe hacerlo en estricta correlación con la prueba presentada, procurando mantener un sentido remediador sin aproximarse al elemento punitivo. *Íd.*

Como ya dijimos, el juicio en su fondo se celebró los días 28 y 29 de noviembre de 2022. El desfile de prueba del primer día de juicio inició con el testimonio de Hani Nafez, seguido del testimonio de Rivera Quiles. Mientras que el desfile de prueba del segundo día comenzó con el testimonio del Notario Nasser Taha Montalvo, seguido de la continuación del testimonio de Rivera Quiles. En total testificaron cuatro personas en el juicio de dos días.

Durante su testimonio, el apelado expresó que Rivera Quiles era dueño de una estación de gasolina ubicada en Aguadilla, Puerto Rico y que está iba a ser embargada por el Banco Popular. Sostuvo que el 16 de febrero de 2016, mediando la buena fe, le entregó a Rivera Quiles un cheque por la cantidad de $140,000.00 para que pagara su deuda con el Banco Popular a cambio de una opción de compra de la referida estación de gasolina. Además, explicó que tal opción de compra se concretizó en un contrato ante el notario Nasser Taha Montalvo en Aguadilla, Puerto Rico. [3] Asimismo, continuó explicando que como parte del proceso de financiamiento las instituciones financieras le requirieron un estudio del suelo para la acreditación de la Junta de Calidad Ambiental. Sin embargo, señaló que Rivera Quiles nunca le proveyó el referido estudio de suelo y, por ello, venció el término para realizar la opción de compra.[4] Posteriormente, Hani Nafez testificó le hizo entrega en efectivo de $20,000.00 adicionales solicitados por este último.[5] Además, Hani Nafez declaró que, luego de 2 años del vencimiento del segundo contrato de opción a compra, le solicitó a Rivera Quiles la devolución de su dinero. Es decir, la devolución de $160,000.00.[6]

---

[3] Véase, transcripción de *Juicio en su Fondo 28 de noviembre de 2022*, de la pág. 28, línea 5 a la pág. 29, línea 5.
[4] *Íd.*, pág. 31 líneas 2-17.
[5] *Íd.*, pág. 45, líneas 11-17.
[6] *Íd.*, pág. 47, líneas 18 y 19.

Por otro lado, Hani Nafez indicó que era dueño de 8 estaciones de gasolina y que contaba con más de 17 años de experiencia como administrador de estas.[7] En base a su experiencia, le comunicó al tribunal que la mencionada estación de gasolina vende 50,000 galones de gasolina mensual aproximadamente y que cuenta con un mini market. Siendo así, puntualizó que hubiera generado una ganancia mensual de $15,000.00 si lo administraba personalmente. En cambio, si lo alquilaba hubiera generado una ganancia de $7,000.00 mensual.[8] Además de esto, y en cuanto a los daños económicos, Hani Nafez declaró como a continuación transcribimos:

P. ¿Qué daños usted recibió por no tener para atrás los ciento sesenta mil (160,000) que usted dio? ¿Qué daños, ha, ha recibido?

R Dos (2) negocios no le he podido comprar. Uno es en Camuy y uno en Arecibo. Me complicó la cosa y no he podido...

P ¿Y dos (2) negocios qué eran?

R Estaciones de gasolina

P Y según la experiencia suya, ¿esas estaciones de ga…? Antes que nada, ¿dos (2) estaciones de gasolina? ¿una en dónde?

R Camuy y una en Arecibo

P La estación de gasolina en Camuy …

R ¡Ujum!

P … según la experiencia suya, ¿cuánto le podía haber dejado a usted mensualmente?

R Estaba cerrado, lo que quería comprar la propiedad.

P Ok. ¿y la, y la otra, no la de Camuy, la de?

R Arecibo, igual.

P ¿Estaba entonces cerrada?

R También. Embargo.

P ¿Embargo los dos (2)?

R Sí.

P Y entonces, explíquele al tribunal, esos ciento sesenta mil dólares ($160,000.00)

---

[7] *Íd.*, pág. 25, línea 14 a la pág. 27, línea 17.
[8] *Íd.*, pág. 52, línea 19 a la pág. 54, línea 20.

…

R    ¡Ujúm!

P    … de usted haberlo obtenido, ¿cómo le hubiese ayudado a poder adquirir esas dos (2) propiedades?

R    Porque las dos (2) propiedades, una en Arecibo, fueron ciento veinte mil dólares ($120,000), propiedad en [embargada], la de Camuy trescientos veinticinco mil dólares ($325,000.00=.

P    ¿O sea, que usted hu… hubiese podido, si, si a usted le hubiesen dado…

R    Me habría…

P    le hubiesen devuelto…

R    Exactamente.

P    los ciento sesenta (160)…

R    Exactamente.

P    … usted hubiese podido comprar la propiedad de Arecibo?

R    De Arecibo, por lo menos una (1).

P    Muy bien. ¿Eh, algún otro daño que usted haya podido detectar por… por no haber podido trabajar o recibir esos ciento sesenta mil (160,000)?

R    Mucho daño.

P    ¿Pero económico, económico?

R    Económico, porque me quedé sin ca… casi "cash flow", en estos momentos, graci, en el momento cuando yo compré la opción de compra a don Daniel.

[…][9]

Por último, al preguntársele qué era lo que le solicitaba al Tribunal, el apelado manifestó que quería que se hiciera justicia. Así, manifestó que exigía que le vendieran la propiedad al precio acordado, y que, si el tribunal decidía que no tenía derecho a comprar, quería su dinero y la ganancia de su dinero en esos 7 años.[10]

La única evidencia que el apelado sometió en cuanto a los alegados daños económicos que reclama sufrió, fueron las declaraciones antes

---

[9] *Íd.*, pág. 57. Línea 10 a la pág. 59, línea 11.
[10] *Íd.*, pág. 62, líneas 8-20.

resumidas y/o transcritas. En estas, no explicó, cómo, a base de su experiencia, llegó al cálculo de los $15,000.00 que alegó hubiera podido generar, ni sometió prueba documental alguna que apoyara su contención. Tales manifestaciones sin prueba adicional, a nuestro juicio, son insuficientes para justificar las cuantías otorgadas por el foro primario. Al final de cuentas, fundamentó las partidas en los estimados brindados por el apelado, sin que este sometiera evidencia pericial o de cualquier otra naturaleza que de una manera u otra justifique la concesión de las sumas concedidas a él. A nuestro juicio, el limitado testimonio del apelado en cuanto a cuáles fueron sus daños económicos es insuficiente para siquiera resarcirle, por no haberlos probado. Así, coincidimos con el apelante en cuanto a la impugnación que levanta en sus dos primeros señalamientos de error.[11]

En cambio, diferimos en cuanto al señalamiento de error que levanta frente a la partida de $20,000.00 que el TPI le ordenó pagar al apelante por conceptos de honorarios de abogados debido a su conducta frívola y temeraria. Aunque es correcto que no debe estimarse como una conducta temeraria el que una parte se defienda en un caso o a modo de reconvención reclame lo que cree tiene derecho a reclamar, aunque no lo tenga, los argumentos que levanta para impugnar la determinación de temeridad ignoran que la razón por la cual se le encontró temerario no fue por haber instado una *Reconvención*, sino porque pese a que en su momento se opuso a la devolución del dinero consignado por alegadamente tener un reclamo a su favor, al momento en que estaba llamado a someter prueba en favor de este, no lo hizo.

---

[11] Es meritorio señalar que las cuantías concedidas, no solamente carecen de justificación ante la prueba de daños económicos desfilada por el apelado, sino que estas exceden por mucho la cantidad que el propio apelado alegó como suma estimada de los daños reclamados en la *Demanda*.

De igual manera, dado que ante nos no se sometieron argumentos que busquen o en derecho puedan impugnar la determinación efectuada por el foro primario en cuanto a que procede la devolución por parte del apelante del dinero que el apelado le entregó como depósito de la opción de compraventa, confirmamos la determinación que ordena la devolución del mismo.

**-IV-**

Por los fundamentos antes enunciados, modificamos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala de Aguadilla el 20 de julio de 2023, en la causa de epígrafe a los efectos de eliminar las partidas concedidas al apelado en concepto de daños económicos. Así, modificada, se confirma en cuanto al resto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones